ENTERED
04/15/2011

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

|  |  |
|---|---|
| IN RE ) | |
| ) | |
| FLOYD R. ELLIS, SR. and ) | CASE NO. 10-80505-G3-7 |
| MARY H. ELLIS, ) | |
| ) | |
| Debtors, ) | |
| ) | |

## MEMORANDUM OPINION

The court has held evidentiary hearings on the "Trustee's Objection to Debtors' Exemptions and Motion for Turnover" (Docket No. 22) and the "Trustee's Second Objection to Debtors' Exemptions, Motion for Turnover under 11 U.S.C. § 542 and Request for Costs" (Docket No. 40). The following are the Findings of Fact and Conclusions of Law of the court. A separate conforming Judgment will be entered. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

## Findings of Fact

Floyd R. Ellis, Sr. and Mary H. Ellis ("Debtors")[1] filed a voluntary petition under Chapter 7 of the Bankruptcy Code on August 27, 2010. Janet S. Casciato-Northrup ("Trustee") is

---

[1] At the two hearings on the two objections to Debtors' claim of exemptions, Floyd Ellis testified. In this opinion, "Ellis" refers to Floyd Ellis.

the Chapter 7 Trustee.

Ellis testified that he worked at SBC until 1998, when he retired. He testified that, after he retired from SBC, he operated an appliance sales and repair business in Galveston, Texas until September 13, 2008, when Hurricane Ike passed over Galveston Island. He testified that, during the time between 1998 and 2008, Debtors also purchased several homes to repair and sell. He also testified that Debtors purchased the homes in order to provide Debtors with a rental income in their retirement.

### Real Property Transactions

Ellis testified that, immediately before Hurricane Ike, Debtors owned and resided in a home at 3238 Cartagena.[2] He testified that Debtors also owned houses at 1107 37th Street and 4129 Las Palmas, and also owned an undeveloped lot in the Palm Beach subdivision. He testified that, shortly after the hurricane, Debtors bought the property at 1101 37th Street.

Ellis testified that Debtors sold the property located at 1101 37th Street on November 30, 2009, and, on the same date, purchased property located at 5525 Palm Circle. He testified that Debtors sold the undeveloped lot on January 29, 2010. He testified that Debtors sold the property at 4129 Las Palmas on April 23, 2010. He testified that Debtors sold the property at

---

[2]All the homes listed are located in Galveston, Texas.

1107 37th Street on May 26, 2010.

Ellis testified that, at the time Debtors sold the properties located at 1101 37th Street, the undeveloped lot, 4129 Las Palmas, and 1107 37th Street, Debtors realized that they had insufficient income to make the payments due on their home. He testified that Debtors' debts far exceeded their assets at that time.

Ellis testified that the sale proceeds of the four sales of property were used first to pay living expenses, then to make repairs to the homes not yet sold, and then to make improvements to the property located at 5525 Palm Circle, where Debtors reside.[3]

Ellis testified that Debtors bought the property at 5525 Palm Circle for $66,000. He testified that Debtors have put over $120,000 in improvements into the home at 5525 Palm Circle since they bought it on November 30, 2009.

On August 27, 2010, Debtors filed their initial schedules, attached to the petition in the instant case. Debtors listed the home at 5525 Palm Circle as their homestead, with a value of $80,290, on Schedule A. Debtors listed a total of $20,875 in personal property on Schedule B. Debtors initially

---

[3]This testimony contradicts the following statement, in Debtors' response to the first objection to exemptions: "All of these funds went into the repair of the parties' current homestead, regardless of the fact that the fair market value of the homestead was not increased." (Docket No. 28).

claimed the Palm Circle property, and all the personal property (excluding $200 cash), as exempt. (Docket No. 1).

Ellis testified that Debtors listed the value of the property at 5525 Palm Circle based on a tax valuation of the property.  Ellis also testified that Debtors purchased the property for $66,000 and put $120,000 into improvements to the property.

On August 27, 2010, Debtors also filed their initial statement of financial affairs.  In their statement of financial affairs, Debtors showed a short sale of the property at 3238 Cartagena on May 7, 2010.  (Docket No. 1).

On Question 10 of the statement of financial affairs, the instructions directed the debtors to:

> List all other property, other than property transferred in the ordinary course of business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case.  (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed).

(Docket No. 1).

Debtors' answer to Question 10 identified the sales of the properties at 1101 37th Street, the undeveloped lot in the Palm Beach subdivision, 4129 Las Palmas, and 1107 37th Street. Debtors answer did not identify the transfer of $66,000 to purchase the property at 5525 Palm Circle on November 30, 2009.

4

(Docket No. 1).

On September 17, 2010, and again on November 1, 2010, Debtors filed amended statements of financial affairs. None of the pertinent information set forth above was changed in the amended statements. (Docket Nos. 14, 18).

### Allianz Annuity

Ellis testified that after his retirement in 1998, he began taking distributions from an annuity. He testified that the value of the annuity was almost $1 million at one time, but that it declined in value after 2001. Debtors did not show ownership of the Allianz annuity on their statement of financial affairs. (Docket No. 1).

In 2004, Ellis purchased an annuity from Allianz Life Insurance Company of North America ("Allianz"), for $439,000. On Debtors' application to purchase the Allianz annuity, Debtors checked a box indicating: "This contract will be funded by a 1035 exchange/Tax Qualified Transfer/Rollover/CD Transfer or Mutual Fund Redemption." The words "Tax Qualified Transfer/Rollover" were circled. In a section in which the instructions stated "This section must be completed to indicate how this contract should be issued," Debtors checked the box labeled "IRA." (Debtors' Exhibit M-2).[4] Ellis testified that he

---

[4] The exhibits offered at the two hearings by Trustee and by Debtor were marked with numbers. In the first hearing, held in February, 2011 as to the objection at Docket No. 22, Trustee's

5

purchased the annuity with proceeds from his 401(k) plan at SBC. The court infers from Ellis' testimony that he had the annuity before 2001, and that he held the funds in an IRA account, that his 401(k) funds were rolled over into an IRA account, and that Ellis used these funds for purchase of the Allianz annuity.

The value of the annuity declined in approximate amounts from $427,700 at the end of 2005 to $400,700 at the end of 2006, $362,300 at the end of 2007, $206,300 at the end of 2008, $74,100 at the end of 2009, and $63,829.72 at the end of 2010. (Debtors' Exhibit M-3). Ellis testified that the current value of the remaining annuity is approximately $64,000.

Debtors appeared for a meeting of creditors. Trustee testified that Debtors testified at the meeting of creditors that the Allianz annuity "no longer existed."[5]

---

exhibits 1, 2, 3, and 7 were admitted, and Debtors' exhibits 1, 3, and 4 were admitted.  In the second hearing, held in March, 2011 as to the objection at Docket No. 40, Trustee's exhibits 1-5 were admitted, and Debtors' exhibits 1-3 were admitted.  In order to avoid confusion, this court identifies the exhibits based on the date presented, thus, for example, "Debtors' Exhibit M-1" denotes Debtors' Exhibit 1 from the March hearing.  "Debtors' Exhibit F-1" denotes Debtors' Exhibit 1 from the February hearing.

[5]Without requesting leave of court to do so, in the course of his direct examination of Ellis, counsel for Trustee played audio recorded from what Trustee and Trustee's counsel both identified as the meeting of creditors.  Although the court grants some latitude in presenting impeachment evidence, counsel did not lay the proper foundation for introduction of the recording.  Counsel's playing of the audio during examination of a witness is improper, and does not bring the recording or its contents into evidence.  The audio recording is not in evidence.

At the hearing on the first objection to exemptions, held on February 15, 2011, counsel for Trustee questioned Ellis regarding the sources of income disclosed in Debtors' statement of financial affairs.  Ellis testified:

> MR. JONES:  Is it a true statement that the sole source of income that you had, other than your benefits, has been the sales of these properties?
>
> MR. ELLIS:  Social security and my veterans' disability, and the sale of the properties.
>
> MR. JONES:  That's it, right?
>
> MR. ELLIS:  It is now.  I had a retirement, from a retirement fund, but basically it's all gone.
>
> MR. JONES:  Basically it's all gone, or it is all gone?
>
> MR. ELLIS:  There's about $60,000 left.
>
> MR. JONES:  There's $60,000 in your retirement fund?
>
> MR. ELLIS:  Yeah, it's in an annu- it's in a- it was set up for 72T distribution after I retired.  Just about.
>
> MR. JONES:  What do you mean, just about?  Do you understand that you were required to list everything you owned an interest in as of the date of filing of your bankruptcy case?
>
> MR. ELLIS:  I was told that's exempt.

(Electronic Recording, 2/15/2011).

Ellis' testimony at the February 15, 2011 hearing was the first time that Debtors disclosed to the court or to Trustee that Debtors still had an interest in the Allianz annuity.

At the conclusion of the February 15, 2011 hearing, counsel for Trustee orally moved for an order compelling Debtors

7

to turn over the annuity to Trustee.  After the hearing, on February 15, 2011, Debtors filed amended schedules B and C.  In their amended schedule B, Debtors identified the Allianz annuity, listed with a value of $63,355.93.  Debtors claimed the annuity as exempt, pursuant to Tex. Prop. Code § 42.0021.

Debtor's Testimony Regarding Preparation of
<u>the Schedules and Statement of Financial Affairs</u>

Ellis testified at the February 15, 2011 hearing that, in preparing to file the instant Chapter 7 case, he and Mrs. Ellis went over the petition, the schedules, and the statement of financial affairs, before they signed those documents.  However, Ellis also testified at the same hearing that he never saw the documents until after they were filed.

At the hearing on March 15, 2011, Ellis testified that Debtors had provided to their attorney, Gerson Bloom, documents regarding Debtors' financial condition, including documents related to the Allianz annuity.  He testified that he discussed the annuity with Bloom.  He testified that, after the initial schedules and statement of financial affairs were prepared, but before they were filed, he did not meet with Bloom.  He testified that he met with Bloom's assistant, that he quickly flipped through the documents, and then signed them.

In the objection to exemptions at Docket No. 22, Trustee seeks disallowance of Debtors' claim of a homestead exemption in the 5525 Palm Circle property, pursuant to Section

522(o) of the Bankruptcy Code.  In the objection to exemptions at Docket No. 40, Trustee seeks disallowance of Debtors' claim of an exemption as to the Allianz annuity, on grounds Debtors' amendments to Schedules B and C were filed in bad faith, and that the Allianz annuity is not qualified for exemption under the Internal Revenue Code.

In response, Debtors assert that their failure to schedule the Allianz annuity, and failure to disclose use of the proceeds from the sales of property to purchase and improve the home at 5525 Palm Circle, were mistakes made in the office of their counsel.  Debtors assert that the estate has suffered no prejudice by reason of their late amendment of the schedules.

## Conclusions of Law

### Homestead

Bankruptcy Rule 4003(c) provides:

> (c) Burden of Proof.  In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed.  After hearing on notice, the court shall determine the issues presented by the objections.

Rule 4003(c), Fed. R. Bankr. P.

Prior to the adoption of the 2005 amendments to the Bankruptcy Code, debtors were permitted to convert non-exempt assets into exempt assets on the eve of bankruptcy, unless other evidence proved an actual intent to hinder, delay, or defraud creditors.  In re Lowry, 69 F.3d 536 (5th Cir. 1995).

Section 522(o) of the Bankruptcy Code, which was added by the 2005 amendments, provides:

> (o) For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of an interest in—
>
> > (1) real or personal property that the debtor or a dependent of the debtor uses as a residence;
> >
> > (2) a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence;
> >
> > (3) a burial plot for the debtor or a dependent of the debtor; or
> >
> > (4) real or personal property that the debtor or a dependent of the debtor claims as a homestead;
>
> shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.

11 U.S.C. § 522(o). In the instant case, Debtors elected Texas exemptions under Section 522(b)(3)(A).

There are four elements to establishing an objection under Section 522(o): (1) the debtor disposed of property within the 10 years preceding the date of filing of the bankruptcy petition; (2) the property that the debtor disposed of was not exempt; (3) some of the proceeds from the sale of the nonexempt property were used to buy a new homestead, improve an existing

10

homestead, or reduce the debt secured by an existing homestead; and (4) the debtor disposed of the nonexempt property with the intent to hinder, delay or defraud a creditor.  In re Presto, 376 B.R. 554 (Bankr. S.D. Tex. 2007), citing In re Sissom, 366 B.R. 677 (Bankr. S.D. Tex. 2007).

With respect to the instant case, Debtors disposed of four parcels of real property during the six months before they filed the petition, and used the proceeds to acquire and improve the property they are claiming as their homestead.  Thus the question of whether their exemption of the property is reduced depends on whether they disposed of the property with the intent to hinder, delay, or defraud a creditor.

Intent to hinder, delay, or defraud creditors may be inferred from the debtors' conduct.  In re Olivier, 819 F.2d 550 (5th Cir. 1987).

Trustee advances a "badges of fraud" theory for determining whether Debtors' conversion of non-exempt assets to exempt assets on the eve of bankruptcy was done with the intent to hinder, delay, or defraud a creditor.

The court in Sissom identified thirteen badges of fraud:

> a. The transfer or obligation was to an insider.
> b. The Debtor retained possession or control of the property after the transfer.
> c. The transfer or obligation was concealed.
> d. Before the transfer was made or obligation incurred, the Debtor had been sued or threatened with suit.

>    e. The transfer was of substantially all the Debtor's assets.
>
>    f. The Debtor absconded—i.e., avoided service of process and/or concealed himself.
>    g. The Debtor removed or concealed assets.
>    h. The value of the consideration received by the Debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
>    i. The Debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
>    j. The transfer occurred shortly before or shortly after a substantial debt was incurred.
>    k. The transfer was done just prior to the filing of the Debtor's bankruptcy petition.
>    l. The Debtor is unable to explain the disappearance of assets.
>    m. The Debtor has engaged in a pattern of "sharp dealing" prior to bankruptcy.

Sissom, 366 B.R., at 692-693.

The court in Presto applied these badges of fraud to a case in which the debtor, a vice president at Enron who had received a $2 million bonus, purchased improvements to his homestead just before filing bankruptcy.

In the instant case, while Debtors had a responsibility to review and sign the schedules and statement of financial affairs, they are not sophisticated individuals. Their failure to include all property in the schedules and statement of financial affairs, in itself, appear to have been the result of inadequate and poor advice from Debtors' counsel, Gerson Bloom.[6]

---

[6]The court notes a troubling pattern in cases in which Gerson Bloom represents debtors in bankruptcy. In several of these cases, the debtors, or in the case of debtors who were not individuals, the individuals who were responsible for the debtors' decision making, testified either that they had been

In the instant case, Debtors were aware they had sold and bought properties, and had the remainder of a once-large annuity, but Ellis testified credibly that he believed these were exempt.  In the event, he was correct.  But as to the real property, he showed only the sale of four parcels, but failed to show the purchase of a new homestead.  As to the Allianz annuity, he did not show it.  This failure the court attributes directly to poor advice and sloppy office practices by counsel.  The court finds credible Ellis' testimony that documents relating to all real estate transactions, as well as the annuity, were turned over to Debtors' counsel before the schedules and statement of financial affairs were prepared and filed, and that counsel did not go over the schedules and statement of financial affairs with Debtors before filing.

In addressing the problems created for Debtors by their counsel, the court has considered the Fifth Circuit's conclusions in In re Nikoloutsos, 199 F.3d 233 (5th Cir. 2000).  However, in that case, the court noted that Nikoloutsos was "fully aware" of the $600,000 judgment (amended to $863,440) against him for abuse of his spouse, and lacked candor in failing to list a debt which

---

advised that they were not required to disclose various activities, or that they were not advised of the necessity to disclose various activities.  See In re Southbelt Properties Management, LLC, Case No. 10-80254-G3-11, Slip Op. 11/19/2010; In re Aircomm Communications, Inc., Case No. 10-80444-G3-11, Slip Op. 12/2/2010; In re SBPM Holdings, Inc., Case No. 10-80310-G3-11, Slip Op. 12/2/2010.

would have made him ineligible for Chapter 13.

In the instant case, Debtors turned over all of the information to Bloom, and Bloom failed to accurately prepare the schedules and statement of financial affairs. Bloom compounded this failure to accurately prepare the schedules and statement of financial affairs by failing to adequately consult with Debtors as to whether the schedules and statement of financial affairs as prepared were untrue or misleading. The court concludes that Debtors' conduct does not show an intent to hinder, delay, or defraud creditors, either considered under the totality of the circumstances or analyzed under Trustee's "badges of fraud" theory.[7]

---

[7] The badges of fraud considered with respect to a fraudulent transfer as stated in <u>Sissom</u> and <u>Presto</u> do not perfectly fit with the conversion of nonexempt property to exempt property, despite the presence of the same language, "hinder, delay or defraud creditors," in Section 522(o), as in Sections 548 and 727(a)(2) of the Bankruptcy Code. In the instant case, analyzed under a badges of fraud theory, no more than six of the thirteen identified badges of fraud are present. Two of these, which the court in <u>Presto</u> found satisfied by the retention and occupation of the property, are common to all homesteads, and not just those purchased or improved with intent to hinder, delay, or defraud creditors. Among the remaining four, the seeming concealment reflects poor practice by Debtors' counsel rather than a plan on Debtors' part to conceal the conversion to exempt assets. With respect to the instant case, the conversion of substantially all of Debtors' assets to nonexempt, the timing within the six months prepetition, and Debtors' insolvency are not enough grounds on which to deny them a homestead exemption.

<u>Allianz Annuity</u>

Bankruptcy Rule 1009(a) provides:

> (a) General Right to Amend. A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby. On motion of a party in interest, after notice and a hearing, the court may order any voluntary petition, list, schedule, or statement to be amended and the clerk shall give notice of the amendment to entities designated by the court.

Rule 1009(a), Fed. R. Bankr. P.

Amendments to schedules are generally allowed liberally under Rule 1009. However, allowing an amendment to schedules claiming an exemption is different from allowing the exemption itself. <u>In re Sandoval</u>, 103 F.3d 20 (5th Cir. 1997). Amendment to exemptions may be denied "if there is a showing of the debtor's bad faith or of prejudice to the creditors." <u>In re Williamson</u>, 804 F.2d 1355 (5th Cir. 1986).

This court requested that the parties brief the question of whether the Allianz annuity is a qualified plan under the Internal Revenue Code. In Debtors' brief, they argue:

> 1. Section 42.0021, of the Texas Property Code, exempts certain savings plans under Texas law if they comply with the appropriate sections of the Internal

15

>Revenue Code of 1986 found at 26 U.S.C., Sec. 403(b) or 408A.  Subsection (a) of 42.0021, of the Texas Property Code specifically enumerates annuities as) exempt from attachment, execution, and seizure for the satisfaction of debts unless the plan is not qualified pursuant to the Internal Revenue Code.
>
>2.   ...this plan is qualified pursuant to Section 403(b), of the Internal Revenue Code.

(Docket No. 43).[8]

While Trustee's brief addressed the Internal Revenue Code question in only a cursory manner, Trustee did testify that she believes there was prejudice to the estate and creditors because Trustee was not aware of the existence of the Allianz annuity until Ellis disclosed it during the February 15, 2011 hearing.  She also testified that the estate incurred additional legal fees in the prosecution of two separate objections to exemptions.[9]

As a preliminary matter, before addressing the question of Debtors' bad faith or prejudice to creditors, the court addresses the question of whether the Allianz annuity would be

---

[8] The court notes that Debtors did not address at all, in their response to Trustee's objection to exemption of the Allianz annuity, the issue raised by Trustee of whether the Allianz annuity was a qualified plan under the Internal Revenue Code. Thus, Debtors' brief is the only statement of Debtors' argument as to why the Allianz annuity is exempt.  Trustee's brief only addresses this issue in a cursory manner.

[9] The court notes that Trustee has requested an award of compensation from Debtors for prosecuting this second amendment to exemptions.  No additional compensation will be awarded against Debtors.  On an appropriate motion, the court will consider whether to award attorney fees and costs against Bloom. Trustee's counsel may, of course, apply for compensation pursuant to Section 330 of the Bankruptcy Code.

exempt in the absence of such bad faith or prejudice. Debtors assert exemption of the Allianz annuity under Section 42.0021 of the Texas Property Code. That section provides in pertinent part:

> In addition to the exemption prescribed by Section 42.001, a person's right to the assets held in or to receive payments, whether vested or not, under any stock bonus, pension, profit-sharing, or similar plan, including a retirement plan for self-employed individuals, and under any annuity or similar contract purchased with assets distributed from that type of plan, and under any retirement annuity or account described by Section 403(b) or 408A of the Internal Revenue Code of 1986, and under any individual retirement account or any individual retirement annuity, including a simplified employee pension plan, and under any health savings account described by Section 223 of the Internal Revenue Code of 1986, is exempt from attachment, execution, and seizure for the satisfaction of debts unless the plan, contract, or account does not qualify under the applicable provisions of the Internal Revenue Code of 1986.

Tex. Prop. Code § 42.0021.

Debtors assert in their brief that Allianz annuity is exempt based on Section 403(b) of the Internal Revenue Code. Section 403(b) of the Internal Revenue Code addresses an annuity contract purchased:

> (i) for an employee by an employer described in section 501(c)(3) which is exempt from tax under section 501(a),
>
> (ii) for an employee (other than an employee described in clause (i)), who performs services for an educational organization described in section 170(b)(1)(A)(ii), by an employer which is a State, a political subdivision of a State, or an agency or instrumentality of any one or more of the foregoing, or
>
> (iii) for the minister described in section 414(e)(5)(A) by the minister or by an employer,

26 U.S.C. § 403(b).

It is clear, based on Ellis' testimony that he purchased the Allianz annuity with funds received in retirement from his employment at SBC, and his purchase of the annuity in 2004, that the purchase is not covered under Section 403(b) of the Internal Revenue Code.  SBC is not a tax exempt 501(c)(3) organization, and it did not purchase the annuity for Debtors. Nor is SBC an educational organization.  Nor is there any evidence that Debtor is a minister.

However, the question of whether the annuity qualifies under Section 403(b) does not end the inquiry, in light of the objecting party's burden of proof.  Debtors' Exhibit M-2 and Ellis' testimony support a conclusion that Debtors purchased the annuity with rollover funds from Ellis' IRA.  The court concludes that, but for consideration of the question of Debtors' bad faith or prejudice to creditors, the Allianz annuity is exempt.

In the instant case, Trustee has not proven any prejudice, other than her costs.  As to Trustee's belief that Debtors concealed the existence of the Allianz annuity, the facts which create an appearance of bad faith are primarily attributable to the sloppy work and incorrect and improvident legal advice of Bloom.  It does appear that Bloom handled this case ineptly, from a review of the court's electronic file (of which the court takes judicial notice), and the testimony.  The court will not hold this ineptitude by Bloom against Debtors.

The court will consider, on appropriate motion and proof, whether to award attorney fees and costs to Trustee against Bloom, in his individual capacity.  The court concludes that the Allianz annuity is exempt.

Based on the foregoing, a separate conforming Judgment will be entered.

Signed at Houston, Texas on April 15, 2011.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE